54 CCPA

**Application of Harry Tacon OPENSHAW and Norman Whittaker.**

**Patent Appeal No. 7452.**

United States Court of Customs and Patent Appeals.

Dec. 19, 1966.

James M. Mason, New Haven, Conn., D. Paul Weaver, Washington, D. C., Donald Brown, Anthony DeLio, New Haven, Conn., for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRK-PATRICK.[*]

ALMOND, Judge.

This is an appeal from the Board of Appeals' affirmance of the rejection of claims 23, 25, and 27 of appellants' application[1] entitled "Method for Making Benzo (a) Quinolizine Derivatives." The rejection is based upon 35 U.S.C. § 103. No claim has been allowed.

Appellants' invention is a one-step process in the over-all synthesis of the naturally occurring compound (-)-emetine (hereinafter emetine) having the structural formula:[2]

Naturally occurring emetine[3] is an established drug in the treatment of amoebiasis, amoebic hepatitis, and amoebic abscesses. According to appellants:

Because of the expense in extraction procedures necessary to recover the naturally occurring alkaloid Emetine from "ipecac root," it became a scientific objective to develop a synthetic route to the preparation of synthetic Emetine having a stereochemical structure *identical* with that of *natural* Emetine.

The gross structure of emetine was elucidated in 1949 and this, according to an article by A. R. Battersby and J. C.

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. H. T. Openshaw and N. Whittaker, serial No. 71,045, filed November 22, 1960.

2. In addition to depicting the *gross* structure of emetine, this formula also shows the spatial relationship of the atoms of the (-)-emetine molecule, or in chemistry parlance its stereochemical configuration. Taking the triple ring benzo-

quinolizine nucleus as being in the plane of the paper, solid and dashed lines are employed to indicate chemical moieties projecting, respectively, above and below the plane of the triple ring benzoquinolizine nucleus.

3. According to the Merck Index 401 (7th ed. 1960), emetine is the principal alkaloid of ipecac, the roots of Uragoga ipecacuanha (Brot.) Baill, Rubiaccae.

Turner, J.Chem.Soc. 717 (1960) "stimulated considerable interest in the synthesis of this alkaloid." At the time of these early synthetic studies, according to Battersby and Turner, the stereochemistry of the four asymmetric centers in emetine (denoted by asterisks in the above formula) was unknown. Subsequent studies, however, established that the stereochemistry on the benzoquinolizine nucleus is that shown above, and this knowledge, the authors state, allowed a stero-specific synthesis to be designed.

The process here claimed is actually the fourth step in a seven-step synthesis of emetine, the fourth step being as follows:[4]

Exocyclic Unsat.
Ester Novel
Saturated 2, 3 Trans Ester

The significant aspect of this reaction is that the hydrogen which attaches to C-2 projects *below* the plane of the three-membered benzoquinolizine nucleus, whereas the hydrogen on C–3 is *above* the plane of such nucleus. The two hydrogens just referred to are thus in a lower alkyl groups and together form a methylene group which comprises the catalytic hydrogenation of a compound of the formula

4. Claim 23 is illustrative and reads as follows:

23. A method for the preparation of compounds of the formula

wherein $R^1$ is an alkyl group having from one to four carbon atoms, $R^2$ is selected from the class consisting of hydroxy and lower alkoxy groups and $R^3$ and $R^4$ are selected from the class consisting of the

Claim 25 differs from claim 23 in calling for "acid catalytic hydrogenation." Claim 27 depends from claim 23 and specifies platinum oxide as the catalyst.

*trans* position[5] relative to each other. This is the stereochemical configuration found in naturally occurring emetine, as shown in the structural formula reproduced above. According to appellants, this configuration is maintained throughout the emetine synthesis.

The prior art relied upon below is Swiss Patent No. 337,846, published June 15, 1959.[6] This patent discloses the following reactions:

It should be noted that only the gross structures and not the stereochemical configurations of the reactants and products are disclosed.

A subsequent publication (A. Brossi and O. Schnider, Helv. Chimica Acta *45*, 1899 (1962)) disclosed the stereochemistry of the compounds involved in the hydrogenation reaction:

2,3-cis[7]

Appellants contend that formation of the 2,3-*trans* isomer via their hydrogenation process is unexpected in view of the Swiss patent (as further elaborated on by the 1962 publication). The examiner and the board, of course, disagreed. The reasoning of the examiner and the board can be summarized as follows: Those in the subject art knew that naturally occurring emetine had the following stereo-

5. Webster's Third New International Dictionary (1961) defines *trans* as: "having certain atoms or groups on opposite sides of the molecule—opposed to *cis*." *Cis* is defined by the same source as: "having or characterized by certain atoms or groups on the same side of the molecule —opposed to *trans*."

6. The inventors are A. Brossi and O. Schnider.

7. According to the authors, compounds having the 2,3-*cis* configuration do not exhibit an *in vitro* amoebicidal effect comparable with that of natural emetine.

chemical configuration in the 2,3-position:

The Swiss patent (as further elaborated on by the 1962 publication) disclosed a hydrogenation process wherein the incoming hydrogen to C–2 attached below the plane of the rings just as does the corresponding hydrogen in appellants' process. The prior process did not give the appropriate stereochemical configuration for emetine because the hydrogen groups in the 2- and 3- positions were *cis* rather than *trans*. This result would have been different if the hydrogen on C–3 of the starting material had been above the plane of the rings. All appellants have done in obtaining the proper configuration is to reverse the positions of the groups on C–3 in their starting material. It is clear from this analysis that the Patent Office focused only on C–2 in arriving at its conclusion that the results of appellants' hydrogenation process were expected.

Appellants appear to argue for a different point of reference than C–2, specifically the configuration of the hydrogen and alkyl groups on C–3. They analyze the situation this way: The Swiss patent discloses a hydrogenation process in which the incoming hydrogen approaches C–2 on the same side of the ring as the hydrogen attached to C–3 and on the opposite side of the ring from the alkyl group attached to C–3. However, in the process here claimed the hydrogen approaches on the opposite side of the ring from the hydrogen attached to C–3 and on the same side of the ring as the alkyl group attached to C–3. According to appellants, this is the reason why the *trans* configuration is obtained in their process. They further state:

* * * scientists having in front of them the process of the Swiss patent, and carrying through this process to the inactive end product corresponding to Emetine *would be discouraged,* since it is *essential* that this hydrogenation process, step 4, produces the 2, 3-*trans* relation which remains the same in subsequent steps in the preparation of active Emetine corresponding to the naturally occurring alkaloid. [Emphasis appellants'.]

The trouble with both the board's and the appellants' view of the obviousness or nonobviousness of the subject invention is the reliance on the 1962 publication which is *not* prior art. Nor can it be regarded as describing the state of the art prior to the filing date of the application on appeal. Quite the contrary, it evidences the fact that further experimentation was required to elucidate the structure of the compounds involved in the hydrogenation process disclosed in the Swiss patent upon which the appealed claims stand rejected. Additionally, appellants do not admit that the subject matter described in the 1962 publication was known to them as of the filing date of the application at bar. The foregoing facts clearly distinguish the 1962 publication from the publication considered in In re Wilson, 311 F.2d 266, 50 CCPA 773. It is very often the case that early endeavors in a scientific field are incomplete and sometimes unsophisticated, and were we to consider as relating back after-acquired knowledge bearing on such earlier work, interim efforts leading to significant advances in the art would go unrewarded. This is entirely contrary to the spirit of the patent system which is "to promote the progress of science and useful arts * * *."

Focusing on the Swiss patent, the only *prior art* cited against appellants' claims, it does not teach or concern itself with the *stereospecific* synthesis of (-) emetine. Nowhere is there mentioned the stereochemical configuration of the starting material or product of the hydrogenation process disclosed in the Swiss patent. Appellants' invention however, *considered as a whole,* appears to represent a signifi-

cant advance in the art. The one-step process which is the subject of the appealed claims is an integral step in the *stereospecific* synthesis of (-) emetine, and appellants have recognized it as such. Nothing in the Swiss patent would make such a discovery obvious. Accordingly, we find the subject matter here claimed nonobvious under 35 U.S.C. § 103 and reverse the board's decision.

Reversed.

SMITH, J., took no part in the decision of this case.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.